**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
--------------------------------------------------------X

| | |
|---|---|
| In Re: | CHAPTER 7 |
| Anthony P. D'Amore, III, | Case No.: 10-35725 (MBK)<br>Adv. Proc. No.: 10-2569 (MBK) |

                                        Debtor.
--------------------------------------------------------X

Sofia Design & Development at South
Brunswick, LLC, Sofia Homes, LLC, The
Guerin Family Trust, Charles Kelly, Eugene
Guerin, James Guerin, Louis Filoso, Michael
Reilly, Steven Langan, James Carey, and
Marsena Carey,

                              Plaintiffs,
          v.

Anthony P. D'Amore, III,

                              Defendant.

--------------------------------------------------------X

APPEARANCES:

Barry W. Frost, Esq.
Teich Groh
691 State Highway 33
Trenton, NJ 08619
Attorneys for the Defendant

Andrew T. Walsh, Esq.
Chamlin, Rosen, Uliano & Witherington
268 Norwood Avenue
P.O. Box 38
West Long Branch, NJ 07764
Attorneys for Plaintiffs

**MICHAEL B. KAPLAN, U.S.B.J.**

## MEMORANDUM DECISION

### I.    INTRODUCTION

This matter comes before the Court upon (i) the motion ("Defendant's Motion") of the Defendant, Anthony P. D'Amore, III, ("Defendant") for summary judgment to dismiss Plaintiffs, Charles Kelly ("Kelly"), Eugene Guerin, James Guerin, Louis Filoso, Michael Reilly, Steven Langan, James Carey and Marsena Carey's (collectively the "Individual Plaintiffs") adversary complaint to declare nondischargeable certain debts of the Defendant, and (ii) the cross motion ("Cross Motion") of the Individual Plaintiffs for summary judgment as to liability, as well as relief from the automatic stay.  The Court has reviewed the pleadings submitted and heard oral argument on February 27, 2012.  The Court issues the following ruling:

### II.    JURISIDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b), 1334(e)(1), 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[1]

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

### III.    PROCEDURAL HISTORY/FACTS

Sofia Homes, LLC ("Sofia Homes") was formed as a construction company focusing on the development and construction of residential housing projects.  Sofia Design & Development at South Brunswick, LLC ("SDD") is a limited liability company ("LLC") established to own property for purposes of development.  Defendant was an officer and member of Sofia Homes and SDD (collectively the "Sofia Entities").  With the exception of Plaintiff Steven Langan, each of the Individual Plaintiffs is a member of one or both of the Sofia Entities.

The Sofia Entities received loans from Amboy Bank and Investors Savings Bank to fund the construction projects of Gateway Commons and Liberty Crossing (collectively the "Loans"). The terms of the Loans restricted the use of the funding specifically to the respective projects. Defendant alleges that Kelly violated the Loan agreements by using the funds to write checks and pay bills for ventures unrelated to the Gateway Commons and Liberty Crossing projects (collectively the "Projects").   Specifically, Defendant claims that Kelly: (1) wrote checks to pay contractors and bills for the renovation of his sister's apartment; (2) paid back investors with money that was designated for the completion of the Projects; and (3) wrote checks from the Sofia Entities' accounts and incurred charges on the Sofia Entities' credit cards without documenting the expenses in the ledgers, and without alerting the Defendant or the bookkeeper of such transactions.  Defendant contends that Kelly's conduct threatened the solvency of the Sofia Entities and stalled the completion of the Projects.  In order to prevent any further harm by Kelly, Defendant contends that he withdrew the remaining funds from the construction account (the "Construction Funds") and moved them into the account of Bay Dock Holdings, LLC ("Bay

Dock")---an entity owned by Roger Passarella ("Passarella") and which now employs the

Defendant.  The Individual Plaintiffs maintain that Defendant improperly diverted Construction

Funds in excess of $350,000.00 from the Sofia Entities between March and June of 2009.

On December 23, 2009, Defendant resigned his office and membership in Sofia Homes.

On March 22, 2010, an action was filed against Defendant, Bay Dock and Passarella in the

Superior Court of New Jersey, Monmouth County, captioned <u>Sofia Design & Development at</u>

<u>South Brunswick, LLC, et. al. v. Bay Dock Holding, LLC, et. al.</u> (MON-L-1430-10) (the "State

Court Action").[2]  In June of 2010, the members of SDD unanimously voted to remove Defendant

from his office and terminate his membership.  On August 20, 2010, Defendant filed a voluntary

petition for relief under Chapter 7, staying the State Court Action as to Defendant.  On October

4, 2011, CAD Contracting filed involuntary Chapter 7 petitions against the Sofia Entities.  On

October 5, 2011, the Individual Plaintiffs and the Sofia Entities executed a "SETTLMENT,

ASSIGNMENT & RELEASE AGREEMENT," transferring to the Individual Plaintiffs all rights

and interests in certain tort claims held by the Sofia Entities.

On December 12, 2010, the Individual Plaintiffs filed the within adversary complaint (the

"Adversary Complaint"), alleging the following claims against the Defendant: (1) fraud while

acting in a fiduciary capacity; (2) defalcation while acting in a fiduciary capacity; (3)

embezzlement; (4) larceny; and (5) usurpation of corporate opportunity.  On December 21, 2011,

the Defendant's Motion was filed.  Defendant contends that the Individual Plaintiffs have failed

to establish a genuine dispute of material fact, or put forth a legal basis to preclude the entry of

summary judgment in his favor.  In this regard, Defendant argues that the transfer of the tort

[2] Trial was scheduled in the State Court Action for March 19, 2012.

claims to the Individual Plaintiffs contravenes New Jersey Law; moreover, even if such transfer is permissible, the Individual Plaintiffs lack standing to pursue the claims. The Individual Plaintiffs oppose the relief, asserting that as a matter of law, they maintain causes of action independent of claims originally held by Sofia Homes and SDD.

On January 13, 2012, the Individual Plaintiffs filed their Cross Motion. The Individual Plaintiffs argue that the Defendant has failed to establish a genuine dispute of material fact, or put forth a legal basis to preclude the entry of summary judgment in its favor as to: (1) Defendant's liability arising from his breach of his fiduciary duties to each of the Individual Plaintiffs; and (2) the granting of relief from the automatic stay to pursue the State Court Action. Defendant opposes the relief, for the reasons expressed in support of Defendant's Motion. For the reasons which follow, the Court grants Defendant's Motion and denies the Cross Motion.

## IV.    <u>DISCUSSION</u>

### A.  Summary Judgment Standard.

Summary judgment is appropriate where "the pleadings, the discovery, and disclosure materials on file, and any affidavits show there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." <u>Fed. R. Civ. P.</u> 56(c).[3] As the

---

[3] Federal Rule of Civil Procedure 56 was amended as of December 1, 2010. As noted by the court in <u>Giuliano v. Coy (In re Coy)</u>:

> Subdivision (a) now contains the summary judgment standard previously stated in subdivision (c). Fed. R. Civ. P. 56 Advisory Committee's Note to 2010 Amendments ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word—genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination.").

2011 Bankr. LEXIS 3196, *6-7 (Bankr. D. Del. Aug. 22, 2011).

Supreme Court has indicated, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citing Fed. R. Civ. P. 1). In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine dispute for trial. Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp., 477 U.S. at 323). In determining whether a factual dispute warranting trial exists, the court must view the record evidence and the summary judgment submissions in the light most favorable to the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those "that might affect the outcome of the suit under the governing law." Id. at 248. An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the result. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted). If the moving party will bear the burden of persuasion at trial, the party must support its motion with credible evidence - using any of the materials specified in Rule 56(c) - that would entitle it to a directed verdict if not controverted at trial. Celotex Corp., 477 U.S. at 331. Such an affirmative showing shifts the "burden of production" to the party opposing the motion and requires the party to either demonstrate the existence of a "genuine [dispute]" for trial or to request additional time for discovery under Fed. R. Civ. P. 56(f). Fed. R. Civ. P. 56(e).

6

Once the moving party establishes the absence of a genuine dispute of material fact, the burden then shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. A party may not defeat a motion for summary judgment unless it sets forth specific facts, in a form that "would be admissible in evidence," establishing the existence of a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(e) (providing that in response to a summary judgment motion the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine [dispute] for trial"). See also Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982); Olympic Junior, Inc. v. David Crystal, Inc., 463 F.2d 1141, 1146 (3d Cir. 1972). If the nonmoving party's evidence is a mere scintilla or is not "significantly probative," the court may grant summary judgment. Liberty Lobby, Inc., 477 U.S. at 249-50. The non-movant will prevail only if the evidence produced is of "sufficient quantum and quality" to allow a rational and fair-minded fact finder to return a verdict in his favor, bearing in mind the applicable standard of proof that would apply at trial on the merits. Id. at 249.

### B.  Summary Judgment is Granted in Favor of the Defendant

#### 1.  Defendant Owed Fiduciary Duties of Care and Loyalty to the Individual Plaintiffs and the Sofia Entities.

At the outset, the Court must address whether the Defendant owed a fiduciary duty to the Individual Plaintiffs and the Sofia Entities under New Jersey law. "In order to establish a cause of action for a breach of fiduciary duty in New Jersey, a plaintiff must show that the defendant

7

had a duty to the plaintiff, that the duty was breached, that injury to plaintiff occurred as a result

of the breach, and that the defendant caused that injury." Goodman v. Goldman, Sachs & Co.,

CIV. 10-1247 FLW, 2010 WL 5186180, *10 (D.N.J. Dec. 14, 2010) (citing St. Matthew's Baptist

Church v. Wachovia Bank Nat. Ass'n, No. Civ.A. 04–4540, 2005 WL 1199045, * 9 (D.N.J. May

18, 2005) (citing In re ORFA Sec. Litig., 654 F.Supp. 1449, 1457 (D.N.J.1987))).   The

Individual Plaintiffs contend that under New Jersey law, a managing member of an LLC owes

fiduciary duties of care and loyalty to both the LLC and its non-managing members.   The

Individual Plaintiffs acknowledge that the New Jersey Limited Liability Company Act, N.J.S.A.

42:2B-1, *et seq.*, (the "NJ LLC Act"), unlike its Delaware statutory counterpart, does not contain

an express recitation of the fiduciary duties owing by LLC officers and/or members; indeed, the

Individual Plaintiffs direct the Court to the Sofia Entities' operating agreements (collectively the

"Operating Agreements") to determine the scope of the Defendant's duties, and urge the Court to

take guidance from the common law of both New Jersey and Delaware relative to partnerships

and corporations.

New Jersey enacted the NJ LLC Act in 1994 to enable members and managers of LLCs

"to take advantage of both the limited liability afforded to shareholders and directors of

corporations and the pass through tax advantages available to partnerships." Kuhn v.

Tumminelli, 366 N.J. Super. 431, 439 (App. Div. 2004) (citing Senate Commerce Committee

Statement, S. Doc. No. 890, at 1 (June 14, 1993)).   The NJ LLC Act provides that when "a

limited liability company is managed by its members, unless otherwise provided in the operating

agreement, each member shall have the authority to bind the limited liability company." N.J.S.A.

§ 42:2B-27(b)(1).  Further, "[e]xcept as otherwise provided in an operating agreement, a member or manager may lend money to, borrow money from, act as a surety, guarantor or endorser for, . . . [an LLC]." § 42:2B-9.  As a result, members are free to structure an operating agreement to either restrict or expand rights, responsibilities and authority of its managers and members.  <u>See</u> <u>Tumminelli</u>, 366 N.J. Super. at 501.  Consequently, the statutory provisions of the NJ LLC Act control in the absence of a contrary provision in an operating agreement.  <u>Id.</u>  The Court must liberally construe the NJ LLC Act "to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." <u>N.J.S.A.</u> § 42:2B-66(a).

Here, the Operating Agreements do not explicitly reduce or limit a manager's or member's fiduciary duties.  The SDD Operating Agreement, for example, states in pertinent part:

> <u>Rights and Obligations of Members</u>. Except for Member voting contemplated or allowed under Section 7.1 of this Agreement and the Act, no Class B Member shall take part in the management or control of the business of the Company, nor shall any Class B Member have the power to sign for or bind the Company.  **A Class A Member is both a Manager and a Member of the Company** and has the rights and powers, and is subject to the restrictions and liabilities of both a Member and a Manager.

> <u>See</u> Walsh Cert., Docket No. 25, Ex. A. at § 5.5 (emphasis added).

*          *          *          *

> **Mangers shall exercise their responsibility and duties to the Company with the highest level of fiduciary care and loyalty to the Company**, in a prudent business manner, and will take all actions and make all votes in good faith consistent with such duties and the community benefits to be served by the Company.

> <u>Id.</u> at § 6.1.2 (emphasis added).

*          *          *          *

<u>Transaction with Members and Affiliates.</u>  Any contract or agreement or agreement with a Member must be approved by the Management Committee in accordance with the Company's Conflict of interest policy. No contract action or transaction is void or voidable with respect to the Company because it is between or affects the Company or one or more of its Members or Managers . . . if any one of the following applies:

(i)     The material facts as to his, her or their relationship or interest as to the contract, action, or transaction are disclosed or are known to the Members or Managers . . .

<u>Id.</u> at § 6.3.1.

*               *               *               *

<u>Liability for Certain Acts.</u>  **Each Manager shall perform his or her duties in good faith, in a manner he or she reasonably believes to be in the best interest of the Company, and with such care as an ordinary prudent person in like position would use under similar circumstances.**  A Manager who performs his or her duties shall not have any liability to the Company or to any Member for any loss or damage sustained by the Company or any Member unless the loss or damage shall have been the result of fraud, gross negligence, willful misconduct or a wrongful taking by such manager.

<u>Id.</u> at § 6.4 (emphasis added).  While the cited provisions of the SDD Operating Agreement expressly state that a manager owes a fiduciary duty of care and loyalty to the company, the Operating Agreement remains silent as to whether fiduciary duties are owed to the non-managing members of SDD.[4]  Consequently, the Court need look to applicable law outside of the Sofia Entities' Operating Agreements to determine whether a manager of the Sofia Entities owes a fiduciary duty to a non-managing member.

---

[4] The Sofia Operating Agreement contains virtually identical provisions to those cited herein, recognizing the liability for damages to the company and its members for breach of the manager's duties, including, but not limited to, "fraud, deceit, gross negligence, willful misconduct or a wrongful taking[.]" <u>See</u> Walsh Cert., Docket No. 25, Ex. B. at § 7.06.

10

In analyzing corporate law issues, the Court regards the decisions rendered by Delaware courts as a germane source of reference. See Lawson Mardon Wheaton, Inc. v. Smith, 160 N.J. 383, 398 (1999) (citing Wheaton, supra, 315 N.J.Super. at 61, 716 A.2d 550; Pogostin v. Leighton, 216 N.J.Super. 363, 373, 523 A.2d 1078 (App.Div.), certif. denied, 108 N.J. 583, 531 A.2d 1356, cert. denied 484 U.S. 964, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987)).[5]   Like the Delaware Limited Liability Company Act ("Delaware LLC Act"), the NJ LLC Act is silent with respect to the nature of the fiduciary duties owing by and among members, leaving this issue to be developed by common law. See, e.g., N.J.S.A. § 42:2B-1, et seq.; see also Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC, CIV. A. 3658-VCS, 2009 WL 1124451, *8, FN 33 (Del. Ch. Apr. 20, 2009) (citing See 6 Del. C. § 18-1104; Robert L. Symonds, Jr. & Matthew J. O'Toole, Delaware Limited Liability Companies § 9.04[B][3] (2007)).   Therefore, when confronted with an LLC case, and lacking pertinent authority interpreting the NJ LLC Act, this Court follows the approach taken by the Delaware courts, which draws from the law of limited partnerships. See e.g., Bay Ctr. Apartments Owner, LLC, 2009 WL 1124451, *8, FN 33

---

[5] See also City of Roseville Employees' Ret. Sys. v. Crain, CIV.A. 11-2919 JLL, 2011 WL 5042061, *3 (D.N.J. Oct. 24, 2011) (New Jersey courts "generally follow Delaware's pronouncements on corporate law, and therefore 'an appropriate source of reference is the case law of Delaware.'") (citing In re Merck & Co. Sec., Derivative & ERISA Litig., 493 F.3d 393, 399 (3d Cir.2007); Seidman v. Clifton Sav. Bank, 2009 N.J.Super. Unpub. LEXIS 2267, at *9 n. 5, 2009 WL 2513797 (N.J.Super.Ct.App.Div. Aug. 19, 2009) (citation omitted)); Casey v. Amboy Bancorporation, A-0715-04T3, 2006 WL 2287024, *24 (N.J. Super. Ct. App. Div. Aug. 10, 2006) ("New Jersey courts find Delaware law "helpful" when analyzing issues of corporate law." (citing Lawson, supra, 160 N.J. at 398, 734 A.2d 738; see also In re S. Canaan Cellular Investments, LLC, 10-MC-0057, 2010 WL 3306907, *7 (E.D. Pa. Aug. 16, 2010) (Relying upon the Delaware Chancery Cases Kelly v. Blum, 2010 Del. Ch. LEXIS 31, *3 (Del. Ch. Ct. Feb. 10, 2010) and Kuroda v. SPJS Holdings, LLC, 2010 Del. Ch. LEXIS 57, *25–*26, 2010 WL 925853 (Del. Ch. Ct. March 16, 2010), the United States District Court for the E.D. of Pennsylvania held that in the absence of an operating agreement altering the traditional fiduciary duties owed by an LLC's managers and controlling members in a manger-managed LLC, those managers and controlling members owe the traditional fiduciary duties that directors and controlling shareholders in a corporation would, including the traditional duties of loyalty and care).

(citing See, e.g., In re Seneca Invs. LLC, 970 A.2d 259, 2008 WL 5704773, at *2 (Del.Ch. Sept.23, 2008); In re Silver Leaf, L.L.C., 2005 WL 2045641, at *10 (Del.Ch. Aug.18, 2005)).

It has been recognized in the context of limited partnerships that "each partner stands in a fiduciary relationship to every other partner." Heller v. Hartz Mountain Indus., Inc., 270 N.J. Super. 143, 150-51 (Ch. Div. 1993) (citing Neustadter v. United Exposition Service Co., 14 N.J.Super. 484, 493 (Ch.Div.1951)). The fiduciary relationship is "one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." Heller, 270 N.J. Super. at 151 (citing Stark v. Reingold, 18 N.J. 251, 261 (1955) (citations omitted)). In cases where a managing partner controls the partnership's business, that partner is held to the "strictest possible obligation" to his or her co-partner. 270 N.J.Super. at 151 (citing Silverstein v. Last, 156 N.J.Super. 145, 152 (App.Div.1978)); see also Bay Ctr. Apartments Owner, LLC, 2009 WL 1124451, *8, FN 33 ("[a]bsent a contrary provision in the partnership agreement, the general partner of a Delaware limited partnership owes the traditional fiduciary duties of loyalty and care to the Partnership and its partners.") (citing Gotham Partners, L.P. v. Hallwood Realty Partners, L.P., 2000 WL 1476663, at *10 (Del.Ch. Sept. 27, 2000)).

Guided by the above principles, and consistent with the LLC cases recently decided by courts within the Third Circuit, this Court holds that absent a contrary provision in an LLC's operating agreement, managing members of an LLC owe the traditional fiduciary duties of loyalty and care to non-managing members of that LLC. Bay Ctr. Apartments Owner, LLC, 2009 WL 1124451, *8; see also Douzinas v. Am. Bureau of Shipping, Inc., 888 A.2d 1146, 1149-50 (Del.Ch.2006); Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc., 854

12

A.2d 121, 153 (Del.Ch.2004); VGS, Inc. v. Castiel, 2000 WL 1277372, at 4-5 (Del.Ch. Aug.31, 2000), aff'd 781 A.2d 696 (Del.2001).[6] However, in the absence of management responsibility and control, members do not owe such fiduciary duties to each other. There is no basis in law "for imposing such a duty upon one member of an LLC in relation to others who stand on equal footing." Antolino v. Quinn, A-2875-07T3, 2009 WL 1361592, *2 (N.J. Super. Ct. App. Div. May 18, 2009).

Based upon the Operating Agreements and Defendant's status as a Class A Shareholder of SDD, the Court finds that at all relevant times Defendant served as the managing member of the Sofia Entities, and therefore, owed fiduciary obligations of care and loyalty to the Individual Plaintiffs. As explained below, however, the Court concludes that the Individual Plaintiffs cannot pursue their claims in this action which are bottomed on the alleged breaches of duty.

---

[6] See also Moschillo v. Jovanov, A-3500-09T2, 2010 WL 5348725 (N.J. Super. Ct. App. Div. Dec. 29, 2010) ("co-equal shareholders in a closely held corporation owe each other a fiduciary duty similar to that of a partnership.") (citing See Balsamides v. Perle, 313 N.J.Super. 7, 14, 712 A.2d 673 (App.Div.1998), aff'd in part, rev'd in part, remanded sub nom Balsamides v. Protameen Chems., Inc., 160 N.J. 352, 734 A.2d 721 (1999)); Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 499 (App. Div. 1958) ("Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty.") (quoting Stark v. Reingold, 18 N.J. 251, 261 (1955)); see also In re Allentown Ambassadors, Inc., 361 B.R. 422, 461 (Bankr. E.D. Pa. 2007) (Applying North Carolina corporate law, the U.S. Bankruptcy Court for the E.D. of PA held that courts in North Carolina would hold that a manager of an LLC owes a duty to the individual members of the LLC that may be the subject of a claim for breach of fiduciary duty); In re S. Canaan Cellular Investments, LLC, 10-MC-0057, 2010 WL 3306907 (E.D. Pa. Aug. 16, 2010) (District Court held that traditional fiduciary duties are imposed only on managers and those designated as controlling members of an LLC) (citing See, e.g., Kuroda v. SPJS Holdings, LLC, 2010 Del. Ch. LEXIS 57, *25–*26, 2010 WL 925853 (Del. Ch. Ct. March 16, 2010)); Laugh Factory, Inc. v. Basciano, 608 F. Supp. 2d 549, 562 (S.D.N.Y. 2009) (New York Courts hold that a manager member of an LLC owes a fiduciary duty to the other members of the LLC).

### 2.    The Individual Plaintiffs Cannot Pursue Their Claims in This Action.

The Individual Plaintiffs contend that Defendant breached his fiduciary duties by: (1) misappropriating and/or diverting the Sofia Entities project funds to Bay Dock; and (2) deliberately concealing or misrepresenting his actions to the Individual Plaintiffs in order to divert said funds.  In response, Defendant argues that while he may have originally testified that he felt he had a duty to disclose the transfer of the Construction Funds to Bay Dock, he did not in fact breach any such duty as a matter of law.  Defendant, instead, takes the position that he diverted the Construction Funds to protect and preserve the Sofia Entities' capital from improper usage by Mr. Kelly.

Under New Jersey Corporate law, directors of a corporation are required to "discharge their duties in good faith and with that degree of diligence, care and skill which ordinarily prudent people would exercise under similar circumstances and in like positions." In re Teleservices Group, Inc., 2009 WL 4250055, *7 (D.N.J. Nov. 25, 2009).  "Where a director in fact exercises a good faith effort to be informed and to exercise appropriate judgment, he or she should be deemed to satisfy fully the duty of [care]." Teleservices Group, Inc., 2009 WL 4250055 at *7 (citing In re Caremark Int'l Inc. Derivitative Litig., 698 A.2d 959, 968 (Del. Ch.1996)). "[D]ue care in the decision[ ]making context is process due care only. . . . Substantive review of business decisions . . .  is effected when decisions are tested for bad faith or waste." 2009 WL 4250055 at *7 (citing Stanziale v. Nachtomi, 416 F.3d at 240).

"The duty of loyalty requires that the best interests of the corporation and its shareholders take precedence over any self-interest of a director, officer, or controlling shareholder that is not

shared by the stockholders generally." Id. (citing McCall v. Scott, 239 F.3d 808, 824 (6th Cir.2001)). "Fiduciaries breach their duty of loyalty by intentionally failing to act in the face of a known duty to act, demonstrating a conscious disregard for their duties." Id. (citing Bridgeport Holdings Inc. Liquidating Trust v. Boyer, 388 B.R. at 564 (citing Stone v. Ritter, 911 A.2d 362, 369 (Del.2006))). In assessing whether a director violates his duty of loyalty, the Court must inquire as to whether the director has a conflicting interest in the transaction. Id. Directors qualify as "interested" if they "either appear on both sides of a transaction [ ]or expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally." Id. (citing In re Seidman, 37 F.3d 911, 934 (3d Cir.1994) (citation and internal quotes omitted)). Encompassed within the duties of loyalty and care is the fiduciary's responsibility to act in good faith. Id. (citing Guttman v. Huang, 823 A.2d 492, 506 n. 34 (Del. Ch.2003) (stating that "[a] director cannot act loyally towards the corporation unless she acts in the good faith belief that her actions are in the corporation's best interest")).

Under Delaware and New Jersey Law, the duty to disclose is encompassed within the duties of loyalty, care and good faith. See Eurofins Pharma US Holdings v. BioAlliance Pharma SA, 623 F.3d 147, 158-59 (3d Cir. 2010) (citing Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC, 922 A.2d 1169, 1184 (Del.Ch.2006)); In re Reliance Sec. Litig., 135 F. Supp. 2d 480, 519-20 D. Del. 2001); see also United Jersey Bank v. Kensey, 306 N.J. Super. 540, 551 (App. Div. 1997). The duty to disclose, however, "is not a general duty to disclose everything the director knows about transactions in which the corporation is involved." Eurofins, 623 F.3d at 158-59

(citing <u>Big Lots</u>, 922 A.2d at 1184).  Rather, it is "[t]he intentional failure or refusal of a director

to disclose to the board a defalcation or scheme to defraud the corporation of which he has

learned, [which] itself constitutes a wrong." 623 F.3d at 158-59 (citing <u>Hoover Indus., Inc. v.</u>

<u>Chase</u>, 1988 WL 73758, at *338 (Del.Ch. July 13, 1988) (quoted in <u>Big Lots</u>, 922 A.2d at

1184)).

     For example, directors are required "to disclose fully and fairly all material obligations

within the board's control when it seeks shareholder action." <u>In re Reliance Sec. Litig.</u>, 135 F.

Supp. 2d at 519-20 (citing <u>Stroud v. Grace</u>, 606 A.2d 75, 84 (1992)).  An omitted fact is material

if there is a "substantial likelihood that the disclosure of the omitted fact would have been

viewed by the reasonable investor as having significantly altered the "total mix" of information

made available." <u>Scheidt v. DRS Technologies, Inc.</u>, 424 N.J. Super. 188, 204-05 (App. Div.

2012) (citations omitted).   Generally, there are three types of transactions where the duty to

disclose arises: (1) where a fiduciary relationship exists between the parties; (2) where either

party to the transaction "expressly reposes . . . a trust and confidence in the other"; or (3) where

the nature of the transaction calls for "perfect good faith and full disclosure." <u>United Jersey Bank</u>

<u>v. Kensey</u>, 306 N.J. Super. 540, 551 (App. Div. 1997) (citations omitted); <u>see</u> <u>also</u> <u>U.S. Small</u>

<u>Bus. Admin. v. Katawczik</u>, 107 F. App'x 281, 285-86 (3d Cir. 2004); <u>see</u> <u>also</u> <u>Joseph Oat</u>

<u>Holdings, Inc. v. RCM Digesters, Inc.</u>, CIV.06-4449(NLH)(JS), 2009 WL 900758 (D.N.J. Mar.

31, 2009) (citing <u>Roll v. Singh</u>, 2008 WL 3413863, *7 (D.N.J.2008) (finding that there was a

fiduciary duty between the majority shareholder and the minority shareholder, thus creating a

duty to disclose material information)).

The Individual Plaintiffs contend that Defendant owed a duty to disclose that he was diverting the Construction Funds to his co-employer Bay Dock.  At his deposition, Defendant testified that he did not advise the Individual Plaintiffs before diverting the Construction Funds. See Walsh Cert., Docket No. 25, Ex. D. at 78:2-79:23.  Further, Defendant testified that he eliminated the Individual Plaintiffs access to the Sofia Entities' Quickbooks records during the time period that he diverted the Construction Funds. Id. at 74:9-75:8.  Moreover, the Individual Plaintiffs maintain that when questioned by Mr. Kelly about the status of the construction loan advances, the Defendant failed to disclose that he had previously arranged for the transfer of the Construction Funds from the Sofia Account to Bay Dock's Account.

The Defendant asserts that he diverted the Construction Funds to prevent Mr. Kelly from improperly using them in violation of the loan agreements.  At Mr. Kelly's deposition, he testified that he was using Sofia Home's capital to pay for the renovation of his sister's apartment when he knew that the loan monies were only to be used for the corresponding Projects. See D'Amore Cert., Docket No. 26, Ex. D. at 96:8-19 & 117:19-118:6.  Thus, Defendant claims that he moved the Construction Funds to Bay Dock's bank account to prevent Mr. Kelly from further using those monies for the renovation of his sister's apartment. Moreover, Defendant contends that Bay Dock actually paid out more money on account of the Sofia Entities' obligations than it was transferred by the Defendant.  Defendant further submits that these excess payments were necessitated by Mr. Kelly's submission of improper invoices for payments made out of the Construction Funds.

17

Notwithstanding his admitted diversion of the Construction Funds, Defendant contends that the Individual Plaintiffs lack standing to assert the breach of fiduciary duty claims set forth in the Adversary Complaint because they do not constitute a cause of action separate and distinct from any claim that could be brought by the Sofia Entities.  The Individual Plaintiffs counter that they maintain direct causes of action against Defendant for breach of fiduciary duties that resulted in injuries independent of those allegedly sustained by the Sofia Entities.  The central issue before this Court, to be decided before reaching the issue of Defendant's alleged breaches of duty, is whether the harm traceable to Defendant's alleged breach of fiduciary duties should be redressed in this action brought by the Individual Plaintiffs, or must instead be pursued, if at all, by the Sofia Entities through their appointed Chapter 7 trustees.

Consistent with 11 U.S.C. § 323 and Fed. R. Bank. P. 6009, the Chapter 7 trustees for the Sofia Entities alone are vested with the authority to act on behalf of these entities.  "While such a claim [breach of fiduciary duty] is ordinarily derivative and not personal, see Strasenburgh v. Starubmuller, 284 N.J.Super. 168, 175-80, 664 A. 2d 497 (App. Div. 1995), aff'd in part, 146 N.J. 527, 683 A.2d 818 (1996), the claim can be considered to be personal if the oppressed minority shareholder can establish an injury distinct from the injury suffered by the shareholders in general."  Weil v. Express Container Corp., 360 N.J. Super. 599, 611 (App. Div. 2003).[7]

A derivative lawsuit enables individual shareholders to assert claims to "enforce a corporate cause of action against officers, directors and third parties."  In re Sharkey, 272 B.R. 574, 581 (Bankr. D.N.J. 2001) (citing Ross v. Bernhard, 396 U.S. 531, 534, 90 S.Ct. 733, 736, 24

---

[7] As cautioned infra, while the case at hand involves the obligations owing by and between members of a New Jersey limited liability company, this Court will be guided by New Jersey and Delaware case law that draws on both corporate and partnership law.

L.Ed.2d 729 (1970)).  "The purpose of the derivative action [i]s to place in the hands of the individual shareholder a means to protect the interests of the corporation from the misfeasance and malfeasance of "faithless directors and managers.""  Sharkey, 272 B.R. 574 at 581 (citing Strasenburgh v. Straubmuller, 146 N.J. 527, 548–49 (1996) (quoting Kamen v. Kemper Financial Servs., Inc., 500 U.S. 90, 95, 111 S.Ct. 1711, 1716, 114 L.Ed.2d 152 (1991) (quoting Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949))).

*The American Law Institute's Principles of Corporate Governance: Analysis and Recommendations* provides a comprehensive definition of the difference between a "derivative" action by a shareholder on behalf of a corporation, and a "direct" action by a shareholder on his behalf:

> (a) A derivative action may be brought in the name or right of a corporation by a holder . . . to redress an injury sustained by, or enforce a duty owed to, a corporation. An action in which the holder can prevail only by showing an injury of breach of duty to the corporation should be treated as a derivative action.

> (b) A direct action may be brought in the name and right of a holder to redress an injury sustained by, or enforce a duty owed to, the holder. An action in which the holder can prevail without showing an injury or breach of duty to the corporation should be treated as a direct action that may be maintained by the holder in an individual capacity.

272 B.R. 574 at 582 (citing Brown v. Brown, 323 N.J.Super. 30, 36, 731 A.2d 1212 (App.Div.), certif. denied, 162 N.J. 199, 743 A.2d 851 (1999)).  In Strasenburgh, the New Jersey Supreme Court provides an example of conduct that would give rise to both types of actions:

> The example is of directors making a worthless investment in untested technology while touting the optimistic potential of the technology.  Investors deceived by the recklessly optimistic statements that occasioned shareholders to buy or retain their shares may sue for the direct injuries that they suffered.  Shareholders may also sue for the derivative

19

injury to the corporation for the imprudent and wasteful investment in faulty technology. The distinction between the two types of action is crucial.

Id. (citing Strasenburgh, 146 N.J. at 549).  Indeed, "a thin line often separates actions that are derivative or individual." Id.

Thus, a shareholder may assert an individual cause of action "where there is a wrong suffered by [a] plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote." Kahn v. Rusckowski, A-2181-08T2, 2010 WL 2696856, *5 (N.J. Super. Ct. App. Div. July 1, 2010).  "To determine whether a complaint states a derivative or an individual cause of action, courts examine the nature of the wrongs alleged in the body of the complaint, not the plaintiff's designation or stated intention." Kahn, 2010 WL 2696856 at *5.  For example, claims brought against directors for the selective dissemination of information to one class of shareholders over another are individual in nature because the shareholders deprived of the information are affected unequally by the unfair dealing. Id.; see also Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12, 15 (Del. Ch. 1992) (contractual rights of shareholders such as the right to vote, or to assert majority control, are independent of any right of the corporation).  As part of its analysis, a court must determine (1) whether the corporation or the suing stockholder suffered the alleged harm; and (2) whether the potential recovery results in a benefit to the corporation or the individual. Id.; see also Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1035 (Del. 2004).

One New Jersey court has blurred the distinction between derivative and individual actions with respect to closely held corporations:

> In the case of a closely held corporation ... the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restrictions and defenses applicable only to derivative actions, and order an individual recovery, if it finds that to do so will not (i) unfairly expose the corporation or the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

Brown v. Brown, 323 N.J.Super. 30, 36, 731 A.2d 1212 (App.Div. 1999). Within the bankruptcy context, the court lacks such discretion, and must dismiss the case if an individual shareholder mistakenly pleads a wholly derivative claim. Under 11 U.S.C. § 541, the bankruptcy trustee becomes a successor in interest to "all legal or equitable interests of the debtor in property as of the commencement of the case." In re Total Containment, Inc., 335 B.R. 589, 620 (Bankr. E.D. Pa. 2005). Likewise, 11 U.S.C. § 323 provides "(a) [t]he trustee in a case under this title is the representative of the estate . . . (b) [t]he trustee in a case under this title has capacity to sue and be sued." 11 U.S.C. § 323. Consequently, the "trustee stands in the shoes of the debtor and can only [sic] assert those causes of action possessed by the debtor." Total Containment, Inc., 335 B.R. at 620. Therefore, the trustee must be the party to assert claims belonging solely to the corporate debtor. See 335 B.R. at 620; see also In re Transcolor Corp., 296 B.R. 343, 361 (Bankr. D. Md. 2003) ("Accordingly, whenever a cause of action 'belongs' to the debtor corporation, the trustee has the authority to pursue it in bankruptcy proceedings." In re Ozark Restaurant Equipment Co., 816 F.2d 1222, 1224 (8th Cir.1987)); see also In re DeMert & Dougherty, Inc., 271 B.R. 821, 838 (Bankr. N.D. Ill. 2001) ("Among those powers, the trustee may bring claims against the debtor's fiduciaries." (citing See Koch Refining v. Farmers Union Central Exchange, Inc., 831 F.2d 1339, 1343 (7th Cir.1987), cert. denied, 485 U.S. 906, 108

S.Ct. 1077, 99 L.Ed.2d 237 (1988) ("rights of action against officers, directors and shareholders of a corporation for breaches of fiduciary duties, which can be enforced by either the corporation directly or the shareholders derivatively before bankruptcy, become property of the estate which the trustee alone has the right to pursue after the filing of a bankruptcy petition.")).

After reviewing the evidence submitted, the Court finds that the Individual Plaintiffs may not recover the alleged breaches of Defendant's fiduciary duties of care and loyalty.  While the transfer of the Construction Funds could be characterized as one of the three types of transactions that would give rise to a duty to disclose, as a matter of law, the Court finds that Defendant owed no such duty of disclosure to the Individual Plaintiffs.  The Court bases this finding on the fact that the allegedly stolen funds are proceeds of the Loans taken by the Sofia Entities and are thus corporate property.  Therefore, any damages suffered initially flow through the Sofia Entities.

As a matter of law, Defendant owed a duty to disclose the transaction to the Sofia Entities only, and thus, there was no breach of any such duty with respect to the Individual Plaintiffs. The Court's decision is also informed by Mr. Kelly's deposition testimony, wherein he confirmed his belief that his personal damages stemmed from the "expectation of making profits on Freehold, Wall Township, South Brunswick" and the consequential damage of being personally forced to file a Chapter 7 Petition as a result of the defaults that were caused by the Loans he personally guaranteed. See D'Amore Cert., Docket No. 26, Ex. D. at 49:25-50:17. The Individual Plaintiffs do not dispute that all damages alleged in the Adversary Complaint

22

were initially suffered by the Sofia Entities, and only thereafter indirectly by the Individual

Plaintiffs.

The Court further determines that the Individual Plaintiffs' claims for misappropriation of

corporate funds and usurpation of corporate opportunities are distinct corporate causes of action,

and do not give rise to an independent shareholder action.[8]  Given this conclusion, the Court

holds that the Individual Plaintiffs lack standing to assert the derivative claims pleaded in the

---

[8] See United States v. Penny Lane Partners, L.P., CIV. 06-1894 (GEB), 2008 WL 2902552 (D.N.J. July 24, 2008)
(Court held that Plaintiff's claim that Defendants breached their fiduciary duty  by taking advantage of their insider
knowledge to the disadvantage of their shareholders was a classic example of a derivative claim.); In re Cendant
Corp. Derivative Action Litig., 96 F. Supp. 2d 394, 397 (D.N.J. 2000) (Plaintiff properly pled a derivative action
consisting of three state law claims for: (1) breach of fiduciary duty by the individual defendants for insider selling
and misappropriation of corporate information; (2) breach of fiduciary duty for "waste of corporate assets,
mismanagement, [and] gross negligence,"; and (3) gross negligence.); see also Pullman-Peabody Co. v. Joy Mfg.
Co., 662 F. Supp. 32, 35 (D.N.J. 1986) (Court held that claims of breach of fiduciary duty and of corporate waste are
not an individual basis for litigation and are injuries to the corporation.  Claims for alleged mismanagement must be
brought as derivative actions.); see also LaSala v. Bordier et Cie, 519 F.3d 121, 131 (3d Cir. 2008) (a breach of
fiduciary duty claim relating to a corporation's loss in value or economic viability is a harm to the corporation and
only derivatively a harm to its shareholders.); see also Litman v. Prudential-Bache Properties, Inc., 611 A.2d 12, 16
(Del. Ch. 1992) (Plaintiffs alleged that the general Partners breached their fiduciary duties by inadequately
investigating and monitoring investments and by placing their interests in fees above the interests of the limited
partners.  The court held that "mismanagement which depresses the value of stock is a wrong to the corporation."
Therefore, the court held that the injury the Plaintiffs were seeking to redress was to the Partnership, as the
misconduct alleged resulted directly in the Partnership receiving a lower amount of income.  The Court further held
that that the reduction in the value of the Plaintiffs' interests flowed from the damage inflicted directly on the
Partnership.); see also Kramer v. W. Pac. Indus., Inc., 546 A.2d 348, 353 (Del. 1988) (A Plaintiff shareholder's
claim that alleged director mismanagement caused the value of his proportionate stock to deteriorate is derivative in
nature.  A claim of mismanagement resulting in corporate waste constitutes a direct wrong to the corporate and only
indirectly impacts all shareholders.); see also In re Cheeks, 467 B.R. 136, 155 (Bankr. N.D. Ill. 2012) (Court held
that plaintiff's claim that Defendant breached his fiduciary duty to plaintiff and misappropriated corporate assets
could only be remedied through a shareholder derivative action because plaintiff did not establish a distinct personal
injury.); compare with Kahn v. Rusckowski, A-2181-08T2, 2010 WL 2696856 (N.J. Super. Ct. App. Div. July 1,
2010) (Court stated that claims against directors for the selective dissemination of information to one group of
shareholders over another are not derivative in nature because the unfair dealing unequally affects shareholders that
were deprived of the information.  Therefore, the Court held that the injury suffered by the shareholder plaintiffs
was not derivative in nature because the defendant's alleged wrongful conduct only harmed the minority
shareholders who were allegedly deprived of the opportunity to decide whether to hold or sell their shares at a price
forty-six percent higher than the stock market price.).

Adversary Complaint, and therefore, they are dismissed as a matter of law.[9]  Having dismissed

the Adversary Complaint, the Court need not address the additional relief sought in the Cross

Motion.  Thus, the Court grants Defendant's Motion, and denies the Cross Motion.[10]

---

[9] The Court's Opinion does not address, because it need not, the Sofia Entities' assignment of its pre-judgment tort claims with respect to the issue of the Individual Plaintiffs' standing in this case.  The Court, however, does recognize that New Jersey courts, as a matter of public policy, have consistently held that tort claims cannot be assigned before judgment. Integrated Solutions, Inc. v. Serv. Support Specialties, Inc., 124 F.3d 487, 490 (3d Cir. 1997) (citing Village of Ridgewood v. Shell Oil Co., 289 N.J.Super. 181, 673 A.2d 300, 307-08 (1996); Costanzo v. Costanzo, 248 N.J.Super. 116, 590 A.2d 268, 271 (1991) ("[I]n New Jersey, as a matter of public policy, a tort claim cannot be assigned."); East Orange Lumber Co. v. Feiganspan, 120 N.J.L. 410, 199 A. 778, 779 (1938); see also Conopco, Inc. v. McCreadie, 826 F.Supp. 855, 865-67 (D.N.J.1993) ("It is clear that under New Jersey law, choses in action arising out of tort are not assignable prior to judgment.")).

[10]      For arguments sake, were the Court to find the Defendant liable for the full amount of the Construction Funds transferred from the Sofia Entities to Bay Dock, the Individual Plaintiffs would still face an uphill battle in proving damages.  The Individual Plaintiffs contend that Defendant diverted in excess of $350,000 from the Sofia Entities to Bay Dock.  The evidence submitted suggests that the monies diverted to Bay Dock were actually paid out to cover expenses that corresponded with the Projects to which the funding was originally obtained. See D'Amore Cert., Docket No. 26, Ex. C.  In fact, the evidence submitted indicates that Bay Dock actually paid out more money on the Sofia Entities' obligations than it was transferred by the Defendant.  This fact is further supported by the "cash analysis" of the Bay Dock bank account that was, according to the Defendant, prepared by the Plaintiffs.  While the contents of said document would have to be corroborated at trial, the Court finds the "cash analysis" revealing nonetheless.  The document shows that Bay Dock owed SDD $227,619.77, but also reveals that Bay Dock paid out $252,324.80 on behalf of SDD.  Thus, according to the "cash flow" analysis, SDD owes Bay Dock $24,705.03.  Indeed, all the evidence submitted as of this date indicates that the debt owing by the Sofia Entities far exceeds that of any amount the Sofia Entities or the Individual Plaintiffs could claim as damages.  Therefore, assuming again that the Court did hold Defendant personally liable for the $470,011.41 in transferred funds, those damages would be used to satisfy the claims of the Sofia Entities' creditors first, which in total exceed more than $7,000,000.00, leaving no excess monies for the Individual Plaintiffs.

## V.    <u>CONCLUSION</u>

In light of the foregoing, the Court grants Defendant's Motion, dismisses the Adversary Complaint, and denies the Cross Motion.    Defendant is directed to submit a form of order reflecting the Court's rulings.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Dated: May 31, 2012

25